UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 29 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

ALFREDA V. DAVIS, )
)
Plaintiff, )
)
v. )
)
NATIONAL COUNCIL OF. )
NEGRO WOMEN, INC., *et al.*, )
)
Defendants. )

(UNSEALED)

Civil Action No. 10-0002 (RCL)

## MEMORANDUM

Before the Court, in its capacity as Dispute Resolution Compliance Judge, is plaintiff's Motion to Enforce Settlement Agreement [39], in addition to defendants' Motion for Summary Judgment [21], plaintiff's Motion to Strike [27], and plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 56(d) [31]. Upon consideration of the motions, the memoranda in support and in opposition, the applicable law, and in particular the Local Civil Rules, the Court will GRANT plaintiff's motion to strike [27]; order corresponding information in defendants' Answer to the Amended Complaint [18] stricken, in addition to information in the answer referencing arbitration; DENY plaintiff's motion to enforce [39]; order plaintiff to tender to defendants payment of $38,750 within 30 days or face dismissal of her case; DENY in part defendants' Motion for Summary Judgment [21]; and leave the outstanding motions for resolution by the merits judge.

**I. BACKGROUND**

Plaintiff Alfreda V. Davis served as Executive Director for the National Council of Negro Women, Inc. (NCNW) from March 2008 until June 2009. In June 2009, Davis submitted notice of her intent to resign, and the Board of Directors voted to grant Davis 90 days of severance pay. Following Davis's resignation, the NCNW failed to pay Davis money pursuant to the severance agreement, and Davis brought suit on January 4, 2010. In her complaint [1], Davis alleged as Count I a breach of contract for failure to pay the agreed-to severance funds, and as Count II a breach of fiduciary duty for NCNW's alleged failure to appropriately manage and fund Davis's retirement plan. Davis sought to receive funds due on the severance contract, and unpaid contributions made to Davis's retirement plan.

The parties agreed to mediate, and the case was submitted to mediation on March 24, 2010. The defendants drafted a settlement agreement and presented it to Davis on May 5, 2010 (purportedly effective May 4, 2010), but Davis did not sign the agreement. Nonetheless, on or about May 5, 2010, NCNW issued a check to Davis for $38,750, the amount contemplated by the draft settlement agreement. The check contained an annotation stipulating that the funds were paid "[i]n full and complete settlement" of Davis's claims against the defendants. Davis endorsed and cashed the check. A dispute arose between the parties as to whether the draft settlement agreement covered Davis's claims regarding NCNW's retirement plan contributions, and negotiations broke down. Davis did not return the funds to NCNW. On May 7, 2010, NCNW directed TIAA-CREF, the administrator of the retirement plan, to return the money NCNW deposited in Davis's retirement account. The parties continued to negotiate, requesting on May 19, 2010 an extension of the settlement deadline to June 2, 2010. The parties failed to reach an agreement, and the case moved into pre-trial proceedings. NCNW took the position that the parties had settled the case, while Davis maintained that no settlement occurred.

Davis filed an amended complaint [17] on January 3, 2011, adding to her original complaint her allegation that NCNW directed TIAA-CREF to return Davis's retirement plan funds. In its answer to the amended complaint [18], defendants argued both that the case had been settled and that the case should have been submitted to arbitration. Despite continuing with pre-trial proceedings and arguing that no settlement was reached, Davis has yet to return the money paid by NCNW in alleged settlement of the dispute.

The defendants filed a motion for summary judgment [29] on April 29, 2011, primarily on the basis that the case was settled during mediation and that Davis accepted and failed to return the funds issued by NCNW. In support of this claim, defendants included as an exhibit to the motion for summary judgment the draft settlement agreement produced during mediation negotiations. Prior to filing the motion, the Chief Mediator apprised defense counsel that Local Civil Rule 84.9(a) prohibits the disclosure of any written or oral communications made in connection with the mediation process, and would therefore bar an argument by defendants in front of the merits judge that the case was settled during mediation. The Chief Mediator further apprised defense counsel that if counsel believed the case had been settled, the appropriate procedure would be to bring the matter before the Mediation Compliance Judge in accord with Local Civil Rule 84.10. Notwithstanding defense counsel's claims of confusion, and protestations that the Chief Mediator never provided this information, plaintiff's counsel confirmed to this Court that the Chief Mediator so informed defense counsel.

On May 27, 2011, Davis filed a motion to strike the motion for summary judgment [27] as to Count I, and on May 29, 2011, Davis filed a memorandum in opposition to defendants' motion for summary judgment [29] as to Count II. In her motion to strike, Davis argued that the Court should not permit defendants to pursue summary judgment as to Count I following

defendants' violation of Local Civil Rule 84.9. Based on the disagreement regarding the effect of the mediation process, Magistrate Judge Deborah Robinson referred the matter to this Court as Dispute Resolution Compliance Judge in accordance with Local Civil Rules 84.9(a)(2) and 84.10 on September 1, 2011.

This Court held a status conference on September 9, 2011, and granted Davis leave to file a motion for a prejudgment attachment with respect to the funds paid by NCNW and retained by Davis. On September 15, 2011, defendants filed notice of withdrawal of that portion of their answer to the amended complaint that asserts that the matters at issue must be submitted to arbitration. On September 16, 2011, Davis submitted this motion to enforce the settlement agreement [39], for the first time arguing that the parties indeed settled the case on May 5, 2010 with respect to Count I, but not Count II, of her complaint.

## II. DISCUSSION

### A. *Plaintiff's Motion to Strike [27]*

Davis seeks to strike from defendants' motion for summary judgment information referencing the mediation process. In particular, Davis seeks to strike Paragraphs 7, 8, and 9 of defendants' statement of material facts; Attachment #3, a copy of the draft settlement agreement; and arguments for summary judgment as to Count I that reference the mediation process, namely Section IV.A of defendants' memorandum in support. Davis's argument relies on Local Civil Rule 84.9(a), which provides:

> (1) The Court hereby prohibits the mediator, all counsel and parties and any other persons attending the mediation from disclosing any written or oral communications made in connection with or during any mediation session.
> (2) There shall be no communication between the mediator and the assigned judge regarding a case that has been referred to mediation. Disputes and complaints of any kind, the resolution of which may

> require the disclosure of information acquired through a mediation, shall not be heard by the assigned judge but shall be brought to the attention of the Compliance Judge as outlined in Local Rule 84.10 below.
> (3) Information acquired through mediation shall not be used for any purpose, including impeachment, in any pending or future proceeding in this or any other court or forum. . . .

Davis asserts that defendants violated this rule by filing a motion for summary judgment with the merits judge referencing the mediation process. This Court agrees. These arguments, and in particular defense counsel's attachment of the draft settlement agreement to the motion, are a flagrant violation of the rule. Those parts of defendants' motion referencing the mediation process must be stricken.

The decision to include these references would be unacceptable even were it the result of an inadvertent error. But defense counsel's actions rise to the level of egregious misconduct given that the Chief Mediator thoroughly explained the local rules and requested that defense counsel take the matter up with the Mediation Compliance Judge. It is simply of no consequence to suggest, as defendants do, that Davis disclosed information regarding the mediation process to a third party. This alleged disclosure, while troublesome if true, in no way whatsoever exonerates defendants' decision to openly flaunt the local rules. Defense counsel intentionally breached clear instructions regarding the confidentiality of the mediation process, and this Court will not permit defendants to argue for summary judgment on the basis of that breach.

Although Davis does not further request that the Court strike similar information and arguments from defendants' answer to the amended complaint, this Court sees no reason why it should not rectify the violation of the local rules with respect to that document. As a result, this Court will order that all references to an alleged settlement in the answer be stricken, namely such references as are made in Paragraphs 14, 17, 21, 22, 23, 24, 25, and 43, and any other such

references. In addition, Attachment #4 to the motion for summary judgment, a copy of e-mail correspondence between counsel regarding the alleged settlement, will also be ordered stricken.

### B. *Plaintiff's Motion to Enforce Settlement [39]*

But whereas defense counsel's actions constitute egregious misconduct, it is all the more egregious for plaintiff's counsel to now file a motion of her own constituting the very same misconduct: disclosing on the public record facts regarding the mediation process, including e-mail correspondence between the parties and the draft settlement agreement. Plaintiff's counsel is well aware of the local rules regarding confidentiality. Indeed, Davis's motion to strike was predicated on those rules, and plaintiff's counsel was present during the September 9, 2011 status conference in which this Court admonished defense counsel for its violation of those rules. It is simply inexplicable that Davis has filed a motion that commits the exact violations that her adversary previously made – violations of which she tried to take advantage strategically in other pre-trial motions. Further inexplicable is Davis's decision to file a motion to enforce a purported settlement agreement that, for over a year, Davis asserted was unenforceable. The decision is even more puzzling given that the Court and the parties contemplated at the September 9 status conference that Davis would instead submit a motion for prejudgment attachment.

Turning to the merits of the motion, Davis seeks to enforce the alleged settlement agreement prepared by defendants on May 5, 2010 (purportedly effective May 4, 2010). However, Davis takes the novel position that the settlement agreement was effective only as to Count I of her complaint; in her view, Count II (the breach of fiduciary duty claim predicated on the retirement account funds in dispute) is still live. In support of this argument, Davis notes that the agreement, while referring to all claims asserted and unasserted in connection with the lawsuit, excluded claims postdating the settlement. Because NCNW did not request that TIAA-

CREF refund the money in Davis's retirement account until May 7, 2010 (after the date of the alleged settlement), Davis asserts that her breach of fiduciary duty claim postdates the settlement and thus remains live.

Davis ignores the obvious fact that the acts underlying her breach of fiduciary duty claim – the alleged failure of NCNW officials to appropriately fund Davis's retirement account – occurred while Davis was employed by NCNW and before the alleged settlement date. Indeed, Davis's complaint and amended complaint refer to alleged fiduciary responsibilities owed to Davis during the time of Davis's employment. The draft settlement agreement, which explicitly mentions Davis's breach of fiduciary duty claim, clearly encompasses that claim. This would be true regardless of whether NCNW later took steps to take possession of retirement funds allegedly owed to Davis that were, at the time of the alleged settlement, kept in a third-party's account. Davis's argument is thus tenuous at best. Combined with the above-detailed misconduct and the complete change in her position, her argument simply inspires incredulity.

However, this Court need not parse which, if any, of Davis's claims were settled on May 5, 2010, because it is plain that no claims were settled during the mediation process. Local Civil Rule 84.7(f) clearly states:

> Agreements reached during mediation shall not bind the parties unless
> they are reduced to writing and signed by counsel and the parties.

No party to this case has established that Davis signed the draft settlement agreement. In absence of such evidence, the Local Civil Rules are clear that the draft settlement agreement cannot be considered binding. Regardless of the intent of the parties during the proceedings to settle some or all of Davis's claims, this Court will enforce its local rules. Unless and until the

parties to this litigation reach a legally effective settlement, or the case is otherwise disposed of, the claims at issue remain unresolved.

## C. Plaintiff's Retention of Settlement Funds

Although the parties failed to abide by the local rules in reaching a settlement, and although Davis has up until her filing of the instant motion maintained that no settlement was reached, Davis has maintained possession of and failed to return the $38,750 in funds offered by the defendants in consideration of an effective settlement. Davis makes no other argument justifying her continued retention of these funds. Instead, Davis's conduct in essence is an attempt to rely on self-help in absence of legal authority. Davis may not pursue unauthorized extrajudicial courses of resolution and still try to invoke the protections of this Court.

Further, contrary to counsel's intimations at the September 9, 2011 status conference, Davis does not seek for the Court to take possession of these funds as a pre-judgment attachment. Accordingly, this Court will order that Davis return the funds to defendants. If Davis does not make payment to defendants in the amount of $38,750 within 30 days of the date of the issuance of this Order, this Court will order Davis's suit dismissed with prejudice.[1]

## D. Defendants' Motion for Summary Judgment [21]

Defendants' summary judgment motion rests on three grounds: 1) that the case was settled, 2) that, as to Count II, Davis was at fault, and 3) that the parties were required to arbitrate. As to the first argument, as discussed above, the Court will grant Davis's motion to strike. As to the third argument, defendants filed a notice on September 15, 2011 that they

---

[1] Although the defendants request an award of interest accrued on the sum, this Court is unaware of any authority that would permit it to grant such an award. Perhaps such funds would be recoverable as damages in a lawsuit for wrongful conversion.

withdraw that portion of its answer to the amended complaint [17] that asserts that these matters were required to be submitted to arbitration, namely Paragraph 38 of that document. This Court will thus further order Paragraph 38 stricken from defendants' amended complaint. Additionally, this Court will order other references to arbitration in the answer to the amended complaint stricken, namely those references in the introductory paragraph and Paragraphs 1, 3, and 20, and any other such references. To the extent that defendants' motion for summary judgment relies on arguments regarding arbitration, this Court will deny the motion.

Defendants' motion for summary judgment as to Count II, and Davis's related 56(d) motion, remain unresolved pending Davis's return of the $38,750 in settlement funds. Resolution of these motions will be left to the merits judge.

### III. CONCLUSION

The misconduct of defendants' counsel, Ronald C. Jessamy, and plaintiff's counsel, Diane Clark, in disclosing confidential settlement discussions in public filings available to the merits judge, in direct violation of the Court's rules, will not and cannot be condoned by the Court.

The plaintiff's actions in accepting and cashing defendants' check was also totally improper, and plaintiff is fortunate to have not been criminally prosecuted. If plaintiff has not provided evidence to the Court that she has returned the money by October 21, 2011, this case shall be dismissed with prejudice for failure to comply with this Court's Order.

This memorandum shall be filed under seal, and will not be provided to the merits judge until after this case has been decided on the merits in this Court, in order to preserve what remains of any confidentiality. A separate unsealed Order shall be issued as of this date.

**SO ORDERED.**

9

*Royce C. Lamberth*
U.S.D.J. 9/21/11